IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA1
Alexandria Division

| | | |
|---|---|---|
| SHIPBUILDERS COUNCIL OF AMERICA, INC., et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:06cv1297 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) | |
| Defendants, | ) ) | |
| MATSON NAVIGATION COMPANY, INC., | ) ) ) | |
| Intervenor-Defendant. | ) | |

**MEMORANDUM OPINION**

At issue in this Administrative Procedure Act ("APA")[1] challenge to agency action is whether the U.S. Coast Guard's ("Coast Guard") preliminary determination that the container vessel modifications proposed by intervenor-defendant Matson Navigation Company, Inc. ("Matson") would not constitute foreign "rebuilding" under the Second Proviso of the Jones Act[2] is "final agency action," subject to review under the APA, 5 U.S.C. § 704. This issue has been fully briefed and argued, and is now ripe for disposition. For the reasons that follow, defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed. R. Civ. P., must be granted as the Coast Guard's preliminary rebuild determination does not constitute "final agency action" under the APA, 5 U.S.C. § 704.

---

[1] 5 U.S.C. § 701 *et seq.*

[2] 46 U.S.C. §§ 12101(a), 12132(b).

**I.[3]**

**A.**

A brief discussion of the Jones Act, and the pertinent implementing regulations, provides important context for understanding and resolving the instant motion. The Jones Act restricts "coastwise trade,"[4] *i.e.*, trade between points in the United States, to vessels wholly owned by United States citizens that have been issued a certificate of documentation with a Coast Guard coastwise endorsement. *See* 46 U.S.C. § 55102. Important here is the Jones Act's Second Proviso, which provides that vessels "rebuilt" outside the United States are permanently disqualified from engaging in coastwise trade.[5] 46 U.S.C. § 12132(b) ("A vessel eligible to engage in the coastwise trade and later rebuilt outside the United States may not thereafter engage in coastwise trade."). And, "a vessel is deemed to have been rebuilt in the United States only if the entire rebuilding, including the construction of any major component of the hull or superstructure, was done in the United States." 46 U.S.C. § 12101(a). Thus, the Jones Act provides that if a vessel is "entirely rebuilt" outside of the Untied States, it is considered to be "rebuilt foreign," and thus, ineligible for coastwise trading privileges. *See* 46 U.S.C. §§ 12101(a), 12132(b).

In 1996, the Coast Guard, pursuant to the Jones Act, promulgated regulations governing

---

[3]The facts recited here are derived from the parties' pleadings, attachments, and the administrative record filed by the parties, pursuant to 5 U.S.C. § 706. As defendants challenge subject matter jurisdiction, it is appropriate to consider "the pleadings as mere evidence on the issue and [to] consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

[4]In particular, coastwise trade is defined as the transportation of passengers or merchandise between points in the United States embraced within the coastwise laws. 46 C.F.R. § 67.3.

[5]In limiting coastwise trading privileges to vessels rebuilt in the United States, the Jones Act aimed to create a market for United States-built, United States-owned, and Untied States-manned vessels "[b]ecause building ships and manning them in the United States was and remains more expensive than in other countries." *OSG Bulk Ships, Inc. v. U.S.*, 132 F.3d 808, 809 (D.C. Cir. 1998).

whether a vessel is "rebuilt" outside of the United States. In particular, these regulations provide that a vessel is "rebuilt foreign" (a) when "a major component of the hull or superstructure not built in the United States is added to the vessel" or (b) when work performed on the vessel's hull or superstructure constitutes a "considerable part" of the hull or superstructure. 46 C.F.R. § 67.177(a)-(b). With regard to the latter provision, the Coast Guard has established regulatory thresholds to determine whether proposed work on a vessel constitutes a "considerable part" of the hull or superstructure. Specifically, the following thresholds apply for steel vessels:

> (1) A vessel *is deemed rebuilt* when work performed on its hull or superstructure constitutes more than 10 percent of the vessel's steelweight, prior to the work . . . .
> (2) A vessel *may be considered rebuilt* when work performed on its hull or superstructure constitutes more than 7.5 percent but not more than 10 percent of the vessel's steelweight prior to the work.
> (3) A vessel is *not considered rebuilt* when work performed on its hull or superstructure constitutes 7.5 percent or less of the vessel's steelweight prior to the work.

*Id.* at § 67.177(b). Furthermore, Coast Guard regulations provide that when a vessel, currently operating with a coastwise endorsement, is altered outside the United States and the alterations either (i) constitute greater than 7.5 percent of the steelweight prior to the work, or (ii) include the addition of a major component of the hull or superstructure not built in the United States, the owner of the vessel must apply for a rebuilt determination within 30 days of the work being completed. *Id.* at § 67.177(e). In particular, this application must include: a detailed outline of the work performed; calculations showing the actual or comparable steelweight of the vessel before and after the work was performed; accurate sketches or blueprints describing the work performed; and any further submissions requested. *Id.* In addition, Coast Guard regulations provide that before undertaking any alterations in a foreign shipyard a vessel owner may apply for a "preliminary rebuilt determination" by submitting the information required for a rebuild determination under subsection (e). *Id.* at § 67.177(g).

3

Regardless of whether a vessel owner seeks a preliminary rebuilding determination pursuant to § 67.177(g), or a rebuilding determination pursuant to § 46.177(e), a vessel owner must submit an "Application for Initial Issue, Exchange, or Replacement of Certificate of Documentation; Redocumentation," in order to receive a coastwise endorsement from the Coast Guard. In doing so, the applicant must certify that the vessel has not been "rebuilt" under the Jones Act. Once the vessel owner does so, the Coast Guard approves the application by issuing a coastwise endorsement authorizing the vessel to engage in coastwise trade.

**B.**

Two plaintiffs brought this action: Pasha Hawaii Transport Lines, LLC ("PHTL), a California limited liability company that operates vessels engaged in coastwise trade, and Shipbuilders Council of America ("SCA"), a Virginia corporation and the largest national trade association representing the United States' shipyard industry.

These plaintiffs named three defendants: the Department of Homeland Security ("DHS"), the department of the United States government responsible for administering certain aspects of the Jones Act; the Coast Guard, the component of DHS responsible for administering certain aspects of the Jones Act; and the National Vessel Documentation Center, a unit of the Coast Guard responsible for making rebuild determinations under § 67.177.[6] In addition, Matson, a California corporation, which owns and operates vessels engaged in domestic coastwise trade, including the vessel that is the subject of the preliminary rebuilt determination considered here, was allowed to intervene as a defendant-intervenor, pursuant to Rule 24(a), Fed. R. Civ. P. *Shipbuilders Council of America, Inc. v. U.S. Department of Homeland Security*, No. 1:06cv1297 (Jan. 19, 2007)

---

[6]It is unnecessary to address or decide whether certain defendants were properly named.

(Order).

By letter to the Coast Guard dated June 15, 2004, Matson requested a "preliminary rebuilding determination," pursuant to § 67.177(g), for three of its vessels, the *M/V Mokihana*, *M/V Mahimahi,* and *M/V/ Manoa*, slated to undergo alterations partly in the Untied States and partly in China. In this letter, Matson described the proposed alterations and requested a "preliminary determination that the proposed work does not constitute a 'foreign rebuilding'" for purposes of the Jones Act. As required by § 67.177(g), the letter detailed the proposed overseas work, submitted steelweight calculations relevant to the Coast Guard's rebuild inquiry, and included sketches of the proposed work.

On June 23, 2004, the Coast Guard responded to Matson's request by stating that the proposed alterations to be performed in China amounted to 6.7 percent of the vessels' steelweight, thus falling within the threshold of "clearly permissible work," that is, below the 7.5 percent regulatory threshold. Accordingly, the Coast Guard confirmed Matson's "understanding that the work described in [Matson's] submission . . . will not result in a finding that the Vessels have been rebuilt" foreign and, therefore, "[t]he work described will not result in the loss of coastwise privileges." The Coast Guard then cautioned Matson that the June 23, 2004 letter "is a preliminary determination based upon the estimates provided." It went on to explain that if the proposed work were modified, the work to be conducted overseas might no longer fall below the regulatory threshold of "clearly permissible work," in which case Matson would be required to apply for a final determination, pursuant to § 67.177(e). In addition, on November 17, 2005, the Coast Guard wrote Matson requesting "written confirmation upon completion of each of the rebuilds at issue in the event it is determined that the actual steel work performed did NOT exceed the anticipated thresholds." Thus, the Coast Guard made clear that following the completion of the alterations on

5

the three vessels, Matson was required (i) to submit written confirmation that the alterations actually performed did not exceed the 7.5 percent threshold of "clearly permissible work"[7] or (ii) to submit a final rebuild determination, pursuant to 46 C.F.R. § 67.177(e), in the event that the actual alterations exceeded the 7.5 percent threshold.

As Matson's designs crystallized, Herbert Engineering Corporation ("Herbert"), the corporation designing a garage to be placed on the three vessels, wrote the Coast Guard on April 25, 2005, seeking a preliminary rebuild determination to confirm its understanding that certain proposed work would be considered "outfitting" work, excluded from the steelweight calculation. On June 8, 2005, after Herbert submitted additional design details, the Coast Guard responded to Herbert, stating that one of the proposed alterations would not be considered outfitting, and thus would be included in the steelwork calculations.

The following year, in an October 26, 2006 letter, Matson advised the Coast Guard that it would not pursue the proposed rebuilds of the *M/V Mahimahi* and *M/V/ Manoa*. In the same letter, Matson sought another "preliminary rebuild determination" that the *M/V Mokihana's* proposed alterations would not constitute "foreign rebuilding." By this letter, Matson informed the Coast Guard that the *M/V Mokihana's* proposed alterations were proceeding, the construction contracts were in place, and the scope of the work was finalized. As a result of these developments, Matson submitted more detailed steelweight estimates. Based on these new estimates, Matson believed that the estimated steelwork to be performed in China amounted to 8.1 percent of the vessel's

---

[7]While the regulations do not require a vessel owner to confirm that the work performed did not exceed its estimates, the Coast Guard has issued several letters, like the one issued to Matson, requesting written confirmation upon completion of the proposed work that the alterations did not exceed the estimates provided in the preliminary rebuild determination. *See e.g.*, U.S.C.G. Priv. Ltr. 638899 (Nov. 17, 2005); U.S.C.G. Priv. Ltr. 1163969 (Sep. 20, 2006); U.S.C.G. Priv. Ltr. 652547 (Jan. 12, 2007).

steelweight, thus falling within the 7.5 to 10 percent range, within which the Coast Guard may determine that the vessel is "rebuilt." Approximately one week later, before receiving a response from the Coast Guard, Matson withdrew its request for a preliminary rebuilt determination for this vessel.

At about the same time, on October 27, 2006, PHTL requested that the Coast Guard reconsider Matson's June 23, 2004 preliminary rebuild determination. PHTL explained that "after consultation with industry sources, we have strong reason to believe that this project . . . will in fact result in substantially more than 6.7 percent of the vessel's steelweight . . . ." Thus, it suggested that

> [i]f, after review of all of the relevant facts described in [PHTL's letter], the Coast Guard finds that the total replacement work on the vessel exceeds 10 percent of the vessel's steelweight, it should issue a final determination that the vessel is being rebuilt, and advise Matson that all work must be done in a U.S. shipyard . . . in order for the vessel to maintain a coastwise endorsement.

Three days later, SCA submitted a letter to the Coast Guard supporting PHTL's request for reconsideration and, like PHTL, asking that the Coast Guard "issue a final determination that all work by Matson must be done in a U.S. shipyard" should the total replacement work exceed 10 percent of the vessel's steelweight. On November 2, 2006, the Coast Guard denied these requests for reconsideration.

Two weeks later, on November 16, 2006, plaintiffs filed the instant suit challenging the Coast Guard's June 23, 2004 preliminary rebuild determination and seeking (i) an order vacating the Coast Guard's June 23, 2004 preliminary rebuild determination as arbitrary, capricious and an abuse of discretion; (ii) a declaration that the vessels will be "rebuilt foreign" and will no longer be entitled to a coastwise endorsement; (iii) an injunction enjoining the Coast Guard from issuing

Matson a coastwise endorsement if the proposed alterations are completed in China; (iv) a declaration that the Coast Guard's implementation of 46 C.F.R. § 67.177(b) is inconsistent with the Jones Act, and specifically, that in conducting rebuild determinations the Coast Guard must consider the project as a whole and consider both the steelweight added to the vessel and removed from the vessel in a foreign shipyard. The defendants moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction because the Coast Guard's June 23, 2004 letter is not final agency action under the APA, 5 U.S.C. § 704.

## II.

In a suit challenging agency action, it is well-settled that the district court must dismiss a complaint for lack of subject matter jurisdiction if the challenged agency action is not "final" as defined by the APA, 5 U.S.C. § 704. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004). In this respect, the party asserting subject matter jurisdiction bears the burden of proving that jurisdiction exists, that is that the challenged agency action is "final agency action," and "should prevail only if the jurisdictional facts are not in dispute and [they are] entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).

## III.

The question presented is whether the Coast Guard's June 23, 2004 letter is final agency action subject to judicial review. The APA makes clear that agency action is subject to judicial review only when it is "final agency action for which there is no other adequate remedy in a court."

5 U.S.C. § 704.[8] Although the APA does not define "final agency action," the Supreme Court has usefully elucidated the phrase by noting that

> [T]wo conditions must be satisfied for agency action to be "final": First, the action must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spears*, 520 U.S. 154, 177-78 (1997) (citations omitted). It follows that to establish subject matter jurisdiction, plaintiffs must show (i) that the June 23, 2004 letter is the "consummation" of the Coast Guard's rebuild and coastwise endorsement determination and (ii) that the June 23, 2004 letter determines rights or obligations, or otherwise has legal consequences. The Coast Guard's June 23, 2004 letter satisfies neither criteria.

With respect to the first requirement, it is pellucidly clear that the June 23, 2004 letter is not the consummation of the Coast Guard's rebuild or coastwise endorsement determination. To begin with, the regulation and the June 23, 2004 letter explicitly refer to the determination as preliminary, which in common parlance connotes a lack of finality. Indeed, Oxford English Dictionary defines the term as an "action, measure, statement, etc., *that precedes another* to which it is introductory or preparatory,"[9] and Merriam-Webster defines "preliminary" as "coming before and usually forming a necessary prelude to something else."[10] The lack of finality of the June 23, 2004 letter is also

---

[8] The APA provides for judicial review of non-final agency action, that is, of a "preliminary, procedural, or intermediate agency action or ruling," when these actions result in a final agency action, which is then subjected to judicial review. 5 U.S.C. § 704.

The core rationale underlying the APA's judicial review provision is that it "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

[9] Oxford English Dictionary, available at http://dictionary.oed.com. (last visited April 5, 2007).

[10] Merriam-Webster's Online Dictionary, available at www.m-w.com (last visited April 5, 2007).

reflected in the Coast Guard's regulations, which require that vessel owner's submit further applications to be adjudged not "rebuilt" or to receive a coastwise endorsement. Specifically, regardless of whether a vessel owner seeks a preliminary rebuild determination, the Coast Guard requires vessel owners to file either a mandatory rebuilding determination,[11] or an application for a coastwise endorsement,[12] before they are entitled to engage in coastwise trade.

Moreover, the non-final nature of the Coast Guard's June 23, 2004 preliminary rebuilding determination is apparent from the particular facts of this case, which illustrate how the plans and estimates submitted in support of a preliminary rebuilding determination often change significantly after a preliminary rebuild determination issues. In this case, Matson sought a second preliminary rebuilt determination one year after the June 23, 2004 preliminary rebuild determination, because, as a result of more detailed engineering plans, questions arose as to whether newly proposed alterations would be included in its steelweight calculations. Then, a year after this second preliminary rebuilt determination, Matson again approached the Coast Guard after further design modifications. In this instance Matson informed the Coast Guard that it would not pursue the proposed alterations to two of its vessels and submitted more detailed steelweight estimates for the sole remaining vessel, the *M/V Mokihana*. Given its new design proposals, the Matson project,

---

[11]As explained above, vessel owners must seek a rebuilding determination if, after the alterations are completed, the alterations constitute greater than 7.5 percent of the steelweight prior to the work or if the alterations included the addition of a major component of the hull or superstructure not built in the United States. 46 C.F.R. § 67.177(e).

Notably, although not required by the regulations, the Coast Guard has also issued final rebuilding determinations where the alterations fell within the threshold for "clearly permissible work," that is, where the work performed resulted in alterations of 7.5 percent or less of the vessel's steelweight. *See* U.S.C.G. Priv. Ltr. 549900 (Mar. 26, 2004).

[12]An application for a coastwise endorsement includes a certification by the vessel owner that the vessel has not been "rebuilt."

which had previously been estimated to result in alterations amounting to 6.7 percent of the steelweight, was now estimated to result in alterations amounting to 8.1 percent of the steelweight. One week after this request, without explanation, later Matson withdrew its third request for a preliminary rebuilt determination. Thus, as this case illustrates, plans for vessel alterations are often modified and until the alteration work is completed there is no way to ascertain, with certainty, whether the proposed steelweight calculations constitute "rebuilding" under the Coast Guard's regulations.[13] *C.f. National Wildlife Federation v. Goldschmidt*, 504 F. Supp. 314 (D. Conn. 1980) (dismissing complaint as unripe because there was no final agency action where agency conditionally approved construction project subject to further study that may result in the agency reaffirming, reforming, or abandoning the proposed project ).[14] As such, a preliminary rebuild determination, which is based on proposed work and estimated steelweight calculations, does not constitute the Coast Guard's final rebuilding determination.

While the parties have not cited, and independent research has not uncovered, any case directly on point, a number of analogous cases support the result reached here. For example, in *American Hawaii Cruises v. Skinner*, 713 F. Supp. 452, 458-59 (D.D.C. 1989), the D.C. Circuit

---

[13]It is worth noting that, while preliminary rebuilding determinations do not ensure that a vessel is not later deemed rebuilt, they may provide vessel owners with some confidence, albeit limited, that the Coast Guard has confirmed the vessel owner's understanding as to what alterations must be included in the steelwork calculation and confirmed the vessel owner's resulting steelweight calculations. Such confirmation may prevent some surprises from arising after the work is performed and the Coast Guard does not issue a coastwise endorsement. *See* U.S.C.G. Priv. Ltr. 621042 (Sep. 21, 2005) (disagreeing with vessel owner's steelweight calculation); U.S.C.G. Priv. Ltr. 655397, 653424, 651627 (June 8, 2005) (disagreeing with vessel owner's characterization of certain alterations as excluded from steelweight).

[14]*C.f. New York Stock Exchange, Inc. v. Bloom*, 562 F.2d 736, 743 (D.C. Cir. 1977) (remanding to district court to dismiss complaint as unripe because informal agency letter was tentative "to the effect that [the agency] would not now take any action if [the bank acted on its proposal], although [the agency] might take a different view of [the proposal's] compatibility with the Glass-Steagall Act at some point in the future after there has been some experience with [the proposal's] actual operation").

concluded that the Coast Guard's first three rebuild determinations were preliminary decisions "not yet ripe for judicial review."[15]  In so concluding, the court relied on the language of the Coast Guard's preliminary rebuilt determination which, as in this case, advised the vessel owner that the determination was "based solely on the preliminary information [the owner] furnished," and stated that "[a] final determination will be made upon completion of the work and submission of the certificate and other papers required by" the regulations.  *Id.* at 459.  Additionally, the court noted that its view comported with the Coast Guard's view that "a final rebuild determination [cannot] be made . . . until the foreign work is completed."  *Id.*[16]  Similarly, in *Keystone Shipping Co. v. United States*, 729 F. Supp. 136 (D.D.C. 1990), a district court dismissed the complaint as unripe because the Coast Guard's determinations regarding the rebuilding of the vessel, pursuant to the Wrecked Vessel Act, were preliminary because the vessel owner had not yet applied for final documentation permitting it to engage in coastwise trade and "the preliminary decisions made by the Coast Guard and the Board of Appraisers [were] not sufficiently final to demand compliance."  729 F. Supp. at 19.  As in these cases, the June 23, 2004 preliminary rebuilding determination is interlocutory in that it precedes the Coast Guard's final determination that the altered vessel is not rebuilt and is entitled to a coastwise endorsement.[17]  In these circumstances, it is clear that the Coast Guard's

---

[15]The focus of this case was not whether there was no subject matter jurisdiction because the preliminary rebuild determinations were not final agency action, but instead whether the doctrine of laches applied to these preliminary rebuild determinations.

[16]*See also Aquarius Marine Co. v. Pea*, 64 F.3d 82, 84 (2d Cir. 1995) (reviewing a Maritime Administration ruling that vessel had been rebuilt, pursuant to the Cargo Preference Act of 1954, and characterizing the Coast Guard's rebuilt determination as a "a *preliminary* ruling that the proposed alterations would not be deemed a 'rebuilding' under the Jones Act") (emphasis added).

[17]It is worth noting that prior to filing this action plaintiffs' correspondence with the Coast Guard suggested that plaintiffs also viewed the June 23, 2004 preliminary rebuilding determination as interlocutory.  As noted above, both PHTL and SCA expressed concern that the actual work completed would exceed Matson's estimates and asked that the Coast Guard "issue a *final determination*" should

preliminary rebuilding determination is not the final "consummation" of the agency's decisionmaking process, and thus not final agency action.

Just as the June 23, 2004 letter fails the first prerequisite for final agency action, it also fails the second, namely the requirement that final agency action determine rights or obligations from which legal consequences will flow. *See Bennett*, 520 U.S. at 177-78. The June 23, 2004 letter does not confer any right on Matson to receive a coastwise endorsement for their vessels, nor does it bind the Coast Guard to conclude that the vessels have not been "rebuilt" overseas. Instead, the June 23, 2004 preliminary rebuilding determination is simply the Coast Guard's confirmation that Matson's *proposed* alterations appear to amount to a certain *estimated* percentage of steelweight, which would fall within the range of alteration not considered "rebuilding" under the Jones Act, and which, *as proposed*, would not lead to the loss of coastwise privileges.[18] For the *M/V Mokihana* to be deemed not "rebuilt," or for it to engage in coastwise trade, Matson must take additional steps after the proposed work is completed. In particular, to create any legal rights additional actions must be taken, thus Matson must either (i) seek a final rebuilding determination after the work is performed or (ii) submit an application for a coastwise endorsement. Only when either of these events occur are legal rights or obligations created with respect to an altered vessel's coastwise trading privileges. Accordingly, the preliminary rebuilt determination is not reviewable

---

the total replacement work exceed 10 percent of the vessel's steelweight."

[18]Notably, Matson conceded at oral argument that the June 23, 2004 letter does not confer any rights upon it. As Matson explained, this is so because the Coast Guard can, subsequent to issuing a preliminary rebuild determination, determine that the alterations do constitute "rebuilding," or it can deny a coastwise endorsement application. *See Dalton v. Spencer*, 511 U.S. 462 (1994) (holding that the report of the Defense Base Closure and Realignment Commission, listing basis recommended for closure, is not final agency action because it "carries no direct consequences," as the report has no effect unless and until it has been approved by the President and Congress).

final agency action.

In conclusion, there is no subject matter jurisdiction to review the Coast Guard's June 23, 2004 letter issuing a preliminary rebuilding determination because the letter is not final agency action under the APA, 5 U.S.C. § 704.

An appropriate Order will issue.


_____/s/_____

Alexandria, Virginia                                              T. S. Ellis, III
April 6, 2007                                                           United States District Judge